Appellant, Gary McLaughlin appeals from a partial summary judgment in favor of Alabama Farm Bureau Mutual Casualty Insurance Co., Inc. (Farm Bureau). This dispute arose because of the denial of coverage by Farm Bureau under a fire insurance policy on McLaughlin's business. The first claim was for breach of contract by Farm Bureau; the trial court denied summary judgment on this claim. The trial court granted summary judgment as to the second claim for intentional misrepresentation and the third claim for bad faith refusal to pay. Pursuant to A.R.Civ.P. 54 (b) the trial court directed entry of final judgment as to these two claims which are now before us on this appeal.
McLaughlin owned and operated McLaughlin's I.G.A. Foodliner in Theodore, Alabama. On October 8, 1980, Farm Bureau issued a fire insurance policy on McLaughlin's grocery store. On November 18, 1980, at some time after 6:45 p.m., a fire at the store caused approximately $120,000.00 in damages to the building and its contents. On January 13, 1981, after investigating the fire, Farm Bureau denied payment on the policy. One of the bases for the denial was that McLaughlin had provided false information in the application to Farm Bureau for coverage. The policy has a provision stating:
 "This policy is void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance."
Farm Bureau took this position because McLaughlin had answered "No" to a question on the application asking whether McLaughlin had ever been sued or sued anyone, when, in fact, he had been involved in litigation. McLaughlin stated in his deposition that he specifically told Terry Barnes, the agent for Farm Bureau who filled out the application, that he had been sued by a lady who fell in the store. He also testified that Barnes indicated he would not even bother putting it down and that Barnes proceeded to check "no" on the application.
In his original complaint, McLaughlin set forth the following allegations of misrepresentation by Farm Bureau:
 "The Plaintiff avers that he paid the premiums on said policy of fire insurance to the Defendant, ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY, INC., based on the representations made by the defendant, ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY, INC., to him, that it would pay all proceeds due under the insurance policy, No. SMP01273, when and if the Plaintiff did suffer loss of personal property and income due to a fire.
 "The Plaintiff further avers that these representations made by the Defendant, ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY, INC., were false and were fraudulently made and the said Defendant had no intention of paying the said fire insurance proceeds on the said policy since he specifically told them on his application that he had one prior lawsuit filed against his place of business but that the said agent failed to note this on the application and therefore have denied the Plaintiff's claim based on the fact that the application contains false information when on the contrary the Plaintiff did state to the said Defendant or its agent, the correct information but that the Defendant purposely listed the false information so that if any claim were made it could use this *Page 88 
false statement as a basis for its denial of said claim."
The defendant, Farm Bureau, thereafter filed a motion for summary judgment. Before it was ruled upon by the court, the plaintiff amended his complaint "in its entirety" to read as follows:
 "The Plaintiff avers that heretofore and on, to-wit, October 8, 1980, the Defendant, ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY, INC., a corporation, issued a policy of fire insurance, Policy Number SMP01273, covering personal property and contents of refrigerators and freezers located in his grocery store.
". . .
 "The Plaintiff avers that he complied with the provisions of the above mentioned policies of fire insurance based on the representations made by the Defendants to him that they would pay all proceeds due under the insurance policies when and if the Plaintiff suffered a loss of personal property and income due to fire.
 "The Plaintiff further avers that these representations made by the Defendants were false and were fraudulently made and the said Defendants had no intention of paying the fire insurance proceeds on the said policies and wilfully and wantonly failed to pay the Plaintiff's loss under the said policies and that the said Defendants issued the said policies with the present intention not to honor valid claims filed thereunder.
 "The Plaintiff avers that the said fire, set out above, occurred while the said insurance policies were in full force and effect and that he made demand on the said Defendants to pay the proceeds under said policies, but that the said Defendants refused to pay said proceeds and they had no intention whatsoever of paying the proceeds when they issued the policies and have failed and refused to pay the said proceeds due under the policies up to the present time.
 "WHEREFORE, Plaintiff demands judgment against the Defendants for the fraud and misrepresentations set out above in the amount of ONE MILLION AND NO/100 ($1,000,000.00) DOLLARS, for compensatory and punitive damages."
Thereafter, the trial court denied Farm Bureau's motion for summary judgment. Farm Bureau then filed a motion for reconsideration of the denial. The motion for reconsideration was subsequently granted, and upon reconsidering the trial court granted the motion for summary judgment. The order granting summary judgment was later amended so that the motion for summary judgment on the breach of contract claim was denied, but the summary judgment on fraud or misrepresentation and bad faith was granted.
At the outset we must determine whether appellant's amended pleading was sufficient under A.R.Civ.P. 9 (b). Farm Bureau maintains that the amended complaint, which superseded the prior complaint "in its entirety," Zeigler v. Baker,344 So.2d 761 (Ala. 1977), failed to allege fraud with sufficient particularity. Farm Bureau states the complaint fails to set forth the time, place or circumstances of the fraud.
We need not reach this issue because we are of the opinion that if there was error, the defendant failed to preserve it for our review by calling the defect in the complaint to the attention of the trial court. The only motion which might arguably have raised this issue was the motion for summary judgment. That motion, however, was based upon the defendant's allegations that there was "no genuine issue as to any material fact." This court in Almon v. Byrd, 336 So.2d 183 (Ala. 1976), allowed a challenge under Rule 9 (b) where the defendant had made a motion to dismiss under A.R.Civ.P. 12 (b)(6) for failure to state a claim. In doing so, the Court commented:
 "Defendants and the trial court assume that the appropriate method for enforcing Rule 9 (b) is a motion to dismiss under Rule 12 (b)(6). This assumption would appear to be based on the practice of using a demurrer to test the sufficiency of allegations of fraud prior to the adoption of the Alabama Rules of Civil Procedure. *Page 89 
For purposes of deciding this case, we do not question this assumption, but we refer the reader to Wright Miller, Federal Practice and Procedure: Civil § 1300, for a discussion of the problem."
336 So.2d at 185, n. 1. Wright and Miller suggest the use of F.R.Civ.P. 12 (e) where the "allegation of fraud or mistake is in a pleading to which a responsive pleading is permitted." 5 C. Wright A. Miller, Federal Practice and Procedure: Civil § 1300 (1969). Wright and Miller refer to the "multiplicity of viewpoints as to the method of enforcing the particularity requirement" for a fraud action.
In the case before us, we are of the opinion that a motion for summary judgment, based merely upon allegations that there were no genuine issues of material fact, was insufficient to call to the trial court's attention a lack of particularity in the averments of fraud, especially in light of the fact that the motion was made before the complaint was amended, it being the amended complaint that defendant on appeal alleges was insufficient.
The second issue in relation to the grant of summary judgment is whether the trial court erred in granting Farm Bureau's motion on the fraudulent misrepresentation claim. It is well settled law that summary judgment should not be granted, "if the evidence or any reasonable inference therefrom contains the merest gleam, glimmer, spark, the least particle or the smallest trace in support of the theory of the complaint." Exparte Bagby Elevator Electric Co., 383 So.2d 173, 176 (Ala. 1980).
We are of the opinion that the depositions and affidavits presented a genuine issue of material fact on this claim. There was testimony from McLaughlin and his son, who was present when the application was filled out, that Barnes intentionally falsified the application. That falsification was one of the reasons Farm Bureau later denied coverage under the policy.
In Village Toyota Co. v. Stewart, 433 So.2d 1150 (Ala. 1983), this Court stated:
 "The elements of fraudulent misrepresentation under this Code provision [§ 6-5-101] are: (1) a false representation, (2) concerning a material existing fact, (3) which is relied upon by the plaintiff, and (4) damage to the plaintiff as a result of the false representation."
433 So.2d at 1153. On reviewing the evidence in the case before us, we are of the opinion that there was at least a scintilla of evidence (1) that Farm Bureau had falsely represented that it would pay on the policy; (2) that it did so knowing that its agent had falsified the application; (3) that plaintiff signed the application in reliance on the agent's misrepresentation concerning the effect of the false answer; and (4) that plaintiff's claim was denied (thus producing a loss of $120,000.00) as a result of this misrepresentation. The facts of this case are strikingly similar to the fraud action maintained in National Security Insurance Co. v. Beasley,406 So.2d 923 (Ala.Civ.App. 1981), cert. denied, 406 So.2d 926
(Ala. 1981). Thus, we are of the opinion that the trial court erred in granting summary judgment on the claim.
The appellant also urges this Court to reverse the grant of summary judgment on the claim for bad faith refusal to pay with knowledge that there is no lawful basis for the refusal.
In Chavers v. National Security Fire Casualty Co.,405 So.2d 1 (Ala. 1981), this Court initially set out the parameters of a first-party claim of bad faith refusal to pay. In that case we held that there was implied by law a duty of good faith and fair dealing in contractual relationships. Bad faith was defined as "the intentional failure by the insurer to perform this duty implied in law." 405 So.2d at 5. We also went on to state:
 "[A]n actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either `(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal.'" *Page 90 
405 So.2d at 7. We have further stated, in National SecurityFire Casualty Co. v. Bowen, 417 So.2d 179, 183 (Ala. 1982):
 "No lawful basis [for refusal to pay] `means that the insurer lacks a legitimate or arguable reason for failing to pay the claim.' Gulf Atlantic Life Ins. Co. v. Barnes, Ala., 405 So.2d 916 (1981). When a claim is `fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. Ibid."
We have summarized the required showing in a bad faith case as follows:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.
 "The `debatable reason' under (c) above means an arguable reason, one that is open to dispute or question. Webster's Third New International Dictionary (1931) at 116. See Chavers at 10; see also Embry, J., concurring on rehearing in Aspinwall v. Gowens, Ala., 405 So.2d 134 (1981)."
417 So.2d at 183. Finally, in National Savings Life InsuranceCo. v. Dutton, 419 So.2d 1357, 1362 (Ala. 1982), this Court held:
 "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury."
A review of the pleadings, depositions, affidavits, and interrogatories before the trial court convinces us that it was not erroneous to grant the motion for summary judgment on this claim.
There is no dispute as to the existence of an insurance contract between the parties on the date of the fire. It is also undisputed that Farm Bureau intentionally refused to pay the claim. Thus, we are left to determine whether there was a legitimate or arguable reason to refuse to pay the claim.
Hilton Godwin, the adjuster for Farm Bureau, stated in his deposition that coverage was denied for the following reasons: (1) accelerants were found in the store in the area of the fire; (2) certain items listed on McLaughlin's inventory of lost items had been returned for credit after the fire; (3) McLaughlin had misrepresented his financial position to Farm Bureau; and (4) McLaughlin stated on his application for insurance that he had not been involved in prior litigation and this statement was a misrepresentation. We have reviewed each of these reasons for denial and are of the opinion that Farm Bureau's reasons for its refusal to pay were at least "arguable" and therefore its actions do not fall within the parameters of "bad faith" refusal to pay.
Jack Kiser, the fire inspector for the City of Mobile, in a report dated January 8, 1981, stated the following:
 "Pursuant to your request, an investigation was made of the fire loss that occurred on November 18, 1980, at McLaughlin's I G A Store, 2008 Rear Hwy. 90 West, Theodore, Alabama. *Page 91 
 "The investigation was begun on December 6, 1980, and concluded on January 5, 1981, and the following was determined:
"1. The fire was of incendiary origin.
 "2. The fire originated in the stock room-office area.
"3. An accelerant was used.
"4. An accidental source of ignition was negated.
 "5. A fraud was perpetrated in reference to disposing of perishables.
 "6. Discrepancies were noted in the statements taken by this investigator and the statement of the insured which was taken by another adjuster.
". . .
 "The engineer for the other insurance company, Owen Posey, was contacted and the contents of his samples also indicated the presence of a petroleum distillate. According to the statements secured from employees and the insured, there was not any flammables on the premises other than two cans of oil base paints. The toxicologist report indicated the distillate and paint were not similar. Owen Posey stated that he picked up the remains of the coffee maker and his examination revealed the fire did not originate from this appliance. Therefore, it is the conclusion of this investigator's physical examination that there was no accidental or natural cause for the fire.
". . .
 "Herbert Cumbaa stated that he sold bread products to McLaughlin and that he also lived adjacent to the store property. He said that he picked up over $100.00 worth of bake goods after the fire and had given McLaughlin credit for them. He also stated that McLaughlin did not talk to him on the phone when he reported the fire and that he arrived on the scene some thirty minutes later.
 "All of the these statements are in contradiction to the statements made to adjusters Fred Davis and Hilton Godwin. This indicates a fraud was perpetrated in the disposing of the perishables, and J.T. Schoefer, postal inspector, was contacted and she indicated they would prosecute on mail fraud.
"SUMMARY
 "The fire was [of] incendiary origin and an accelerant was used. A fraud was perpetrated by the insured when he apparently returned perishable[s] for credit and then made a claim to the insurance companies for these items."
If any one of the reasons for denial of coverage is at least "arguable," this Court need not look any further. We are of the opinion that the plaintiff was not entitled to a directed verdict on the contract claim, as required by National SavingsLife Insurance Co. v. Dutton, supra, because there was conflicting information before the trial court on each of the reasons for denial of coverage. Specifically, there was conflicting information about the cause of the fire, the inventory listing submitted, and the misrepresentation in the application. For example, while McLaughlin and his son maintain that they told agent Terry Barnes about the prior lawsuit, Albert E. Hatfield, the state fire claims supervisor for Farm Bureau, indicated that Barnes had told him that the application was filled out in accordance with the responses given by McLaughlin. Thus, there was a genuine dispute about information on the application, and that dispute provided an arguable reason for denying coverage. The parties have argued both sides vehemently; however, we are in accord with the trial court in being unable to say there was no arguable reason for denial of coverage. The validity of the reasons will be tested in the breach of contract action still pending in this case.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
JONES, ALMON, SHORES and BEATTY, JJ., concur. *Page 92