TADEUSZ RADECKI, APPELLANT AND CROSS-APPELLEE, V.
MUTUAL OF OMAHA INSURANCE COMPANY, A NEBRASKA
CORPORATION, APPELLEE AND CROSS-APPELLANT.
583 N.W. 2d 320

Filed August 21, 1998.   No. S-96-1294.

James E. Harris and Britany S. Shotkoski, of Harris, Feldman Law Offices, for appellant.

Patrick G. Vipond and Frederick T. Harris, of Kennedy, Holland, DeLacy & Svoboda, for appellee.

CAPORALE, WRIGHT, CONNOLLY, GERRARD, and MCCORMACK, JJ.

GERRARD, J.

## I. INTRODUCTION

Tadeusz Radecki submitted an application to Mutual of Omaha Insurance Company (Mutual of Omaha) for long-term disability benefits, claiming that he was totally disabled due to a major depressive episode. Mutual of Omaha denied Radecki's claim for benefits because it disputed whether he became totally disabled while covered by the policy and because it contended that Radecki's claim was not timely made. Radecki then brought an action against Mutual of Omaha for bad faith and breach of contract, and the case was ultimately tried to a jury. At the close of Radecki's case in chief, the trial court sustained Mutual of Omaha's motion for a directed verdict on the bad faith cause of action because it found that Mutual of Omaha had a reasonable basis for denying the claim as being untimely. The jury returned a verdict in favor of Radecki on the breach of contract cause of action and awarded Radecki damages equal to 24 months of disability benefits. The district court entered judgment on the verdict.

On appeal, Radecki asserts that the trial court erred by, inter alia, directing a verdict in favor of Mutual of Omaha on the bad

faith cause of action. On cross-appeal, Mutual of Omaha argues that the trial court erred in overruling its motions for a directed verdict and judgment notwithstanding the verdict on the breach of contract cause of action. Because we determine that Mutual of Omaha did not engage in bad faith as a matter of law and that there was a factual dispute with respect to the breach of contract action which was properly submitted to the jury, we affirm the judgment of the district court.

## II. FACTS

Radecki was employed as an associate professor in the department of computer science at the University of Nebraska at Lincoln (UNL) beginning on August 19, 1985. During Radecki's employment at UNL, he was covered by a long-term disability insurance policy issued by Mutual of Omaha. Beginning in April 1989, Radecki was treated by internist James A. Fosnaugh, M.D. Radecki's chief complaints were fatigue and an inability to concentrate. In January 1990, Fosnaugh prescribed an antidepressant for Radecki.

On February 13, 1990, the chairman of the computer science department at UNL recommended to the dean of the college of arts and sciences that Radecki not be reappointed for the 1991-92 academic year. The report noted concerns with Radecki's ability to communicate with students and general teaching ability. The dean of the college of arts and sciences adopted the recommendation, and Radecki was informed of the decision. During the spring of 1991, Radecki devoted himself exclusively to research projects. Radecki testified that he continued to work on research projects for UNL during the summer of 1991.

Radecki saw Fosnaugh again on April 2, 1992. At that time, Fosnaugh indicated that Radecki was as depressed as ever but wished to stop taking the antidepressant medication. At this point, Fosnaugh referred Radecki to a psychiatrist, J. Bastani, M.D. Radecki was first seen by Bastani on April 14 when he was no longer an insured under the policy.

On December 3, 1992, one of the attorneys that previously represented Radecki requested an application for long-term disability benefits from Mutual of Omaha. Radecki ultimately submitted his application to Mutual of Omaha on March 17, 1993.

In the application, Radecki indicated that he first became disabled on May 18, 1991, which was the day after UNL's spring semester ended. UNL stated on part B of the application that Radecki was covered by the long-term disability policy through August 31, 1991. Bastani, who completed part C of the application, stated that he did not begin seeing Radecki until April 14, 1992.

On July 2, 1993, Mutual of Omaha denied Radecki's claim. The denial letter stated that because Radecki's appointment with UNL ended on August 31, 1991, his coverage would have ended on midnight as of that date. The letter further stated that the information that Mutual of Omaha had received certified disability only beginning on April 14, 1992. Since disability began after the termination of coverage, Mutual of Omaha declined to approve benefits. The letter went on to quote the policy language regarding proof of loss requirements, as follows:

The claim form is due:

a. Within 90 days after the end of the period for which we are liable; and

b. At least once every 90 days after that period as long as you are totally disabled.

If you do not send us the claim form when due, we will still honor the claim if you send us the claim form as soon as reasonably possible. However, unless you are legally incapable, the claim form must be sent to us no later than one year after items stated in a and b above.

The letter then informed Radecki that he could appeal the decision by providing additional information within 60 days.

Mutual of Omaha received Radecki's appeal on November 10, 1993. Two claims supervisors at Mutual of Omaha independently evaluated Radecki's appeal, and both agreed the denial should be upheld. On November 15, Mutual of Omaha informed Radecki that it was upholding the denial. Mutual of Omaha stated that (1) Radecki did not meet the definition of total disability and did not have verification of total disability and verified treatment by a physician prior to the date his insurance coverage ended and (2) Radecki had not complied with the filing requirement. Mutual of Omaha changed its position from its first denial letter and stated that Radecki last worked on May

17, 1991, rather than August 31, and therefore, that the claim form should have been submitted by February 18, 1992, and in no event after February 18, 1993.

Radecki then filed the instant lawsuit against Mutual of Omaha, claiming breach of contract and bad faith. Both parties obtained further medical reports from various psychiatrists. The medical reports obtained by Radecki reveal that he was totally disabled by at least May 18, 1991. The medical reports obtained by Mutual of Omaha, on the other hand, do not indicate total disability at that time.

At trial, the court granted Mutual of Omaha's motion for a directed verdict on the issue of bad faith, and the breach of contract theory was submitted to the jury. The jury found for Radecki and awarded him $78,916.80, which is equal to 24 months of benefits. The trial judge then reduced the award by $15,955.20, the amount of Social Security benefits Radecki received over 24 months, pursuant to a coordination of benefits provision in the policy, and awarded Radecki attorney fees.

## III. ASSIGNMENTS OF ERROR

Restated and summarized, the following assignments of error are made by Radecki on appeal: The trial court erred (1) in granting Mutual of Omaha's motion for a directed verdict on the bad faith claim; (2) in instructing the jury with respect to repudiation, the measure of damages in the breach of contract claim, and the definition of total disability; (3) in adjusting the jury verdict by the amount of Social Security benefits received by Radecki; and (4) in refusing to allow Radecki's counsel to introduce into evidence a brochure published and distributed by Mutual of Omaha to impeach Mutual of Omaha's agent.

On cross-appeal, Mutual of Omaha raises the following assignments of error: The trial court erred (1) in overruling Mutual of Omaha's motions for a directed verdict and judgment notwithstanding the verdict on Radecki's breach of contract claim due to Radecki's failure to comply with the policy's notification provision and (2) in overruling Mutual of Omaha's motion for a directed verdict on Radecki's breach of contract claim due to Radecki's failure to establish that he was insured on September 1, 1991.

## IV. STANDARD OF REVIEW

In reviewing the action of a trial court, an appellate court must treat a motion for directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Blose v. Mactier*, 252 Neb. 333, 562 N.W.2d 363 (1997); *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996). A directed verdict is proper at the close of all the evidence only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. *Martin v. Roth*, 252 Neb. 969, 568 N.W.2d 553 (1997); *Ethanair Corp. v. Thompson*, 252 Neb. 245, 561 N.W.2d 225 (1997).

In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997); *Dolberg v. Paltani*, 250 Neb. 297, 549 N.W.2d 635 (1996).

## V. ANALYSIS

### 1. BAD FAITH

Radecki claims that Mutual of Omaha acted in bad faith in denying his claim because it failed to conduct a reasonable investigation. In order to establish a claim for bad faith, a plaintiff must show an absence of a reasonable basis for denying the benefits of the insurance policy and the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *John Markel Ford v. Auto-Owners Ins. Co.*, 249 Neb. 286, 543 N.W.2d 173 (1996); *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991). Other jurisdictions have determined that if a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action based on the tort of bad faith. *Weaver v. Allstate Ins. Co.*, 574 So. 2d 771 (Ala. 1990). See, also, *Morgan v. American Family Mut. Ins. Co.*, 534 N.W.2d 92 (Iowa 1995) (insurance company

has right to debate claim that is fairly debatable without being subject to bad faith tort claims); *State Farm Fire and Cas. Co. v. Balmer*, 891 F.2d 874 (11th Cir. 1990) (however recklessly insurer conducts its investigation, bad faith claim cannot succeed where insurer had arguably lawful basis for denying claim), *cert. denied* 498 U.S. 902, 111 S. Ct. 263, 112 L. Ed. 2d 220, *reh'g denied* 498 U.S. 1008, 111 S. Ct. 573, 112 L. Ed. 2d 580; *McLaughlin v. Alabama Farm Bureau Mut. Cas.*, 437 So. 2d 86, 91 (Ala. 1983) (if any one reason for denial of coverage is at least " 'arguable,' " court need not look any further); *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978) (when claim is fairly debatable, insurer is entitled to debate it). We agree. However, before we can consider Radecki's claim that Mutual of Omaha failed to properly investigate his claim, we must first determine whether, at the time of each denial, Mutual of Omaha had an arguable basis on which to deny the claim. If Mutual of Omaha had such a basis, Radecki's bad faith cause of action fails as a matter of law regardless of the manner in which an investigation was or was not conducted.

Whether a claim is fairly debatable is appropriately decided by the court as a matter of law, *Morgan v. American Family Mut. Ins. Co., supra,* and such a determination is based on the information available to the insurance company at the time the demand is presented, *Rhiel v. Wisconsin County Mut. Ins. Corp.*, 212 Wis. 2d 46, 568 N.W.2d 4 (Wis. App. 1997). In the instant case, the trial court determined that "there is absolutely no evidence whatsoever to support a finding of bad faith . . . ." Specifically, the trial court found that there was, at the very least, a legitimate argument that the claim was untimely and therefore that Mutual of Omaha was justified in denying coverage.

In determining whether the trial court was correct, we must examine the information available to Mutual of Omaha at the time of its first denial of the claim. When Mutual of Omaha denied the claim on July 2, 1993, it had the following information with respect to the date Radecki became disabled and stopped working: Radecki's claim form dated March 1, on which Radecki stated that the first date he was unable to work because of his disability was May 18, 1991. On part B of that

same claim form, UNL certified that Radecki last worked on May 17 because his "appointment ended." Part C of the claim form, completed by Bastani, indicates that the date Radecki ceased work was May 17. The entire claim form was transmitted to Mutual of Omaha by UNL along with a note stating, "This is a late filing of the claim."

After requesting medical records from Fosnaugh and Bastani and requesting that Radecki have Fosnaugh complete part C of the claim form, Mutual of Omaha conducted an initial inspection, during which it appears that an employee contacted Radecki by phone and asked him a number of questions, none of which addressed the date he last worked. Next, Mutual of Omaha received a letter from the director of risk management and benefits at UNL, which stated that Radecki's appointment ended on August 31, 1991, and that he was paid through that date. The letter did not discuss the last date Radecki worked. Finally, on June 21, 1993, Mutual of Omaha received part C of the claim form completed by Fosnaugh from Radecki. That form indicates that Radecki ceased work due to disability on May 17, 1991.

Mutual of Omaha's policy requires that a claim form, in order to be timely, be submitted to it within 90 days of the expiration of a 180-day elimination or waiting period. The elimination period begins to run on the day the claimant is no longer able to work due to the disability, and the claimant must remain disabled during the entire elimination period. The policy states that if the claim form is not submitted within 90 days after the end of the period for which Mutual of Omaha is liable, i.e., the elimination period, Mutual of Omaha will still honor the claim if the claim form is submitted "as soon as reasonably possible." However, unless the claimant is legally incapable, the claim form must be sent to Mutual of Omaha not later than 1 year after the original 90-day time limit, according to the policy.

At the time of Mutual of Omaha's first denial, the information submitted by Radecki and his treating physicians, as well as information submitted by UNL, indicated that his disability began and that he ceased work on May 18, 1991. The elimination period therefore ended 180 days later on November 14. Radecki's claim should have been submitted to Mutual of

Omaha within 90 days after the end of the elimination period, or by February 12, 1992. Even if Radecki had submitted information that it was not "reasonably possible" for him to submit the claim by February 12, which he did not do prior to Mutual of Omaha's first denial of the claim, the final deadline for submitting the claim was 1 year later on February 12, 1993. The foregoing dates are slightly different than the dates in Mutual of Omaha's first denial letter because that letter calculated the filing deadlines using months instead of days, that is, it used 6 months instead of 180 days for the elimination period and it used 3 months instead of 90 days for the filing period. Radecki ultimately submitted the claim to Mutual of Omaha on March 17. It is clear, therefore, that Mutual of Omaha had at least one arguable basis on which to deny the claim at the time of its first denial, and we conclude that denial cannot, as a matter of law, result in liability for the tort of bad faith.

Radecki then appealed the denial, and Mutual of Omaha denied the claim for a second time on November 15, 1993. Radecki had submitted comprehensive medical records for Mutual of Omaha's consideration on appeal but did not submit any new information with respect to the untimely claim. Radecki's "Brief in Support of Appeal of Disability Claim Denial" discusses at length the reasons he believes the medical records he submitted established that he was totally disabled on May 18, 1991, but it fails to address in any way why the claim was not submitted to Mutual of Omaha in compliance with the policy's express time requirements. Mutual of Omaha's second denial letter addresses the untimely claim as the first reason for its denial. Again, reasonable minds could not differ that Mutual of Omaha had an arguable basis on which to deny the claim, and therefore, there was no bad faith as a result of its second denial as a matter of law. Consequently, we determine that the trial court did not err in sustaining Mutual of Omaha's motion for a directed verdict on the bad faith issue.

## 2. JURY INSTRUCTIONS

### (a) Repudiation

With respect to the breach of contract claim, Radecki argues that the jury should have been instructed on the issue of whether

Mutual of Omaha repudiated the insurance contract and that if such repudiation occurred, he was entitled to a lump sum payment of all profits he would have realized under the contract, i.e., all past and future benefit payments. We have stated that the question whether there has been repudiation or whether repudiation was justified is a question of fact for the jury. *Chadd v. Midwest Franchise Corp.*, 226 Neb. 502, 412 N.W.2d 453 (1987). However, in the instant case, the facts are not disputed—Mutual of Omaha clearly denied Radecki's claims for the reasons previously discussed. We are presented with a question of law as to whether a good faith denial of benefits is, in fact, a repudiation which might justify in futuro damages or whether repudiation of an insurance contract requires something more.

While we have never addressed the question, we are persuaded by the weight of authority that a good faith denial of benefits is, as a matter of law, not a repudiation.

> Even if the insured under a health and accident policy renewable at the option of the insurer had made demand for total disability, a good-faith rejection by the insurer would not constitute renunciation or repudiation of the policy so as to be an anticipatory breach.
>
> . . . [I]t is clear that the duty of good faith and fair dealing does not bar the insurer from seeking a judicial resolution of controverted issues.

15 George J. Couch, Cyclopedia of Insurance Law § 53:322 at 325 (rev. 2d ed. 1983). See, also, 20 John Alan Appleman & Jean Appleman, Insurance Law and Practice § 11251 at 12 (1980) ("a mere refusal to pay, or a denial of liability upon specified grounds, which the insurer honestly believes to be valid, is not such an outright repudiation as amounts to a renunciation of the contract"). The distinction between a dispute over the rights of the parties under the contract and a dispute wherein the insurer expressly repudiates the contract is whether the insurance company renounces the fact that it is bound by the contract, which would be an express repudiation, or whether it merely denies it is liable under the terms of the policy. *Willis v. Insurance Co. of North America*, 820 F. Supp. 408 (E.D. Ark. 1993).

In an analogous case, the Eighth Circuit held that denial of a claim as untimely was not a repudiation of the contract 'and therefore, that the plaintiff was not entitled to an award of future disability benefits. *General American Life Insurance Co. v. Yarbrough*, 360 F.2d 562 (8th Cir. 1966). After concluding that timeliness of the claim was an express condition precedent for receiving benefits, the court went on to state:

> The defendant never denied the existence of contractual relations with plaintiff and never indicated any intent not to abide by the provisions of the policy. Defendant only denied plaintiff had made proof of the claimed disability within the time and in the manner provided by the policy. Such action by defendant is not repudiation of the policies so as to result in an anticipatory breach of their provisions, and plaintiff is not entitled to the present value of the future installments of disability payments.

*Id.* at 568.

Likewise, in the instant case, Mutual of Omaha has never denied that it is bound by the terms of the contract. In fact, it has admitted in its answer to the amended petition that Radecki was covered by the insurance contract through August 31, 1991. Instead, Mutual of Omaha has denied liability pursuant to the terms of the contract because it believes that Radecki did not perform a condition precedent—making a timely claim—and that the medical records do not indicate that Radecki was totally disabled during the time he was covered by the policy. We conclude that this good faith denial of Radecki's claim is not a repudiation of the insurance contract as a matter of law and that the district court did not err in refusing to instruct the jury on the issue of repudiation.

### (b) Breach of Contract Damages

Radecki next argues that the trial court failed to properly instruct the jury regarding breach of contract damages. With respect to damages resulting from a breach of contract, the trial court, over Radecki's objection, instructed the jury as follows:

> If you find in favor of the plaintiff on his claim of breach of contract, then you must determine the amount of the plaintiff's damages. You may consider the following

damages you decide were proximately caused by the defendant's breach.

1. Following a 180 day waiting period, a monthly amount equal to $2,751.63 for each month in which you find the plaintiff was unable to perform each of the main duties of his regular occupation and was not engaging in any work for profit, up to a maximum of 24 months. Unless you find the plaintiff was unable to perform each of the main duties of his occupation and was not engaging in any work for profit for 24 months, do not consider number 2.

2. A monthly amount equal to $2,751.63 for any following months to the date of this trial for each such month in which you find the plaintiff was unable to perform each of the main duties of the gainful occupation for which he is reasonably fitted by training, education, and experience.

3. A retirement plan contribution of $536.57 for all months you find the plaintiff is entitled to benefits under paragraphs 1 and 2 above.

4. Do not make any adjustments for cost of living or Social Security benefits. I will determine these amounts if necessary.

Radecki had tendered the following instruction with respect to the breach of contract damages:

If you find in favor of the Plaintiff on his claim of breach of contract, then you must determine the amount of Plaintiff's damages.

The proper measure of damages is that amount which will compensate Plaintiff for the loss which fulfillment of the disability insurance contract would have prevented. Plaintiff is entitled to the full benefits he would have realized under the contract.

In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997); *Dolberg v. Paltani*, 250 Neb. 297, 549 N.W.2d 635 (1996). Furthermore, to establish reversible error from a court's failure to give a requested instruction, an

appellant has the burden of showing that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the tendered instruction. *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998). Given the facts that the trial court properly sustained Mutual of Omaha's motion for a directed verdict with respect to the bad faith claim and that Radecki was not entitled to in futuro damages, we determine that the trial court's instruction correctly stated the law.

Additionally, it is not error for a trial court to refuse a requested instruction if the substance of the proposed instruction is contained in those instructions actually given. *Kent v. Crocker*, 252 Neb. 462, 562 N.W.2d 833 (1997). Radecki's requested instruction stated that if the jury found Mutual of Omaha breached its contract, Radecki was entitled to the full benefits that he would have realized under the contract. The instruction given by the trial court simply sets forth the policy language regarding the amount of benefits payable under the contract. Thus, the trial court's instruction more than adequately instructed the jury as to the substance of Radecki's proposed instruction, particularly in light of the fact that Radecki was not entitled to an award of future benefits as a matter of law. This assignment of error is without merit.

### (c) Definition of Total Disability

Radecki also claims that the jury should not have been instructed to consider the second tier of the definition of total disability that is contained in the policy. The second tier, or part b, of that definition provides that a claimant is totally disabled if, after benefits have been paid for 24 months, the claimant is unable to perform each of the main duties of any gainful occupation for which he or she is reasonably fitted by training, education, and experience. Radecki argues that because Mutual of Omaha never paid any benefits, part b of the definition of total disability cannot apply to him and that the court erred by including that language in its instructions to the jury.

However, as Radecki correctly pointed out in his brief, "[i]n a breach of contract case, the ultimate objective of a damages

award is to put the injured party in the same position the injured party would have occupied if the contract had been performed, that is, to make the injured party whole." (Emphasis omitted.) Brief for appellant at 26 (citing *Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994)). Thus, if the jury found that Mutual of Omaha breached the insurance contract and that Radecki was disabled for at least 24 months after the elimination period, it was to put Radecki in the same position as if the contract had been performed, i.e., as if payments had been made for 24 months. The parties to an insurance contract may make the contract in any legal form they desire, and in the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability and to impose whatever restrictions and conditions they please upon their obligations, not inconsistent with public policy. *Ploen v. Union Ins. Co.*, 253 Neb. 867, 573 N.W.2d 436 (1998). The trial court plainly did not err by including in its instructions the language from part b of the policy definition of total disability.

### 3. SOCIAL SECURITY OFFSET

Radecki also contends that the district court erred in offsetting the jury's verdict by the amount of Social Security benefits he received. The policy contains a coordination of benefits provision which states: "Your Monthly Income Benefit will be reduced by any benefits you or your dependents receive (or are eligible to receive) because of your disability or age from: (a) Social Security . . . ." Radecki maintains that despite the clear language of the policy, Mutual of Omaha is not entitled to an offset because "Mutual has not and will not ever pay a monthly income benefit as required under the policy. Rather, any payment made by Mutual will be in the form of a judgment." (Emphasis omitted.) Brief for appellant at 30. As discussed above, because the jury found that Mutual of Omaha breached the contract, the appropriate remedy was to place Radecki in the same position he would have been in if the contract had been performed. Therefore, if the contract had been performed, Mutual of Omaha would have been entitled to an offset for the Social Security benefits Radecki received, and the trial court did not err in that regard.

#### 4. USE OF BROCHURE TO IMPEACH

At trial, Mutual of Omaha's long-term disability claims supervisor testified that Social Security disability benefits are easier to obtain than long-term disability benefits under Mutual of Omaha's policy. Radecki's counsel attempted to impeach the claims supervisor by introducing into evidence a brochure published by Mutual of Omaha which states that the Social Security "definition of disability is extremely strict, making it difficult to receive benefits." Mutual of Omaha objected to the brochure's being introduced on the bases of its not being listed as an exhibit, improper form, and lack of foundation. The trial court sustained Mutual of Omaha's objection to the introduction of the brochure. Radecki contends that the trial court erred in excluding the brochure.

To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998); *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997). Radecki has failed to show any way in which exclusion of the brochure unfairly prejudiced his substantial rights at trial. As the trial court noted, although the language in the brochure may have amounted to "puffing" by Mutual of Omaha in order to market its long-term disability insurance, there was no evidence presented that Radecki ever saw or relied on the brochure. Moreover, impeaching the claims supervisor on the point of whether Social Security benefits were more or less difficult to obtain than Mutual of Omaha's disability benefits would not have benefited Radecki's case in any significant way, as the claims supervisor testified that the Social Security determination does not influence Mutual of Omaha's coverage determination.

Therefore, even if the trial court erred in excluding the brochure, an issue we need not decide, Radecki has failed to show any way in which the exclusion of the brochure unfairly prejudiced his substantial rights at trial.

#### 5. CROSS-APPEAL

On cross-appeal, Mutual of Omaha contends that the trial court erred in refusing to sustain its motions for a directed ver-

dict and judgment notwithstanding the verdict on Radecki's breach of contract cause of action because Radecki failed to comply with the policy's notification provision and because Radecki was not covered under the policy when he became totally disabled. The relevant policy provision states that a claimant is totally disabled if he or she is completely and continuously unable to perform each of the main duties of his or her regular occupation and is not engaging in any work for profit. A number of physicians testified on Radecki's behalf that he was totally disabled at least by May 18, 1991. If he had been disabled within the meaning of the policy on May 18, his claim would have been submitted outside the time limits contained in the policy.

However, at trial and on appeal, Radecki maintained that he could not meet the policy definition of totally disabled as long as he was employed by UNL and therefore "engaging in any work for profit." In its answer to the amended petition, Mutual of Omaha admitted that Radecki was "employed at [UNL] as a professor of computer science until August 31, 1991," and that Radecki "was among the eligible class persons to receive benefits under the disability contract of [UNL] until August 31, 1991." An admission made in a pleading on which the trial is had is more than an ordinary admission; it is a judicial admission and constitutes a waiver of all controversy so far as the adverse party desires to take advantage of it, and therefore is a limitation of the issues. *Whalen v. U S West Communications*, 253 Neb. 334, 570 N.W.2d 531 (1997).

There is some evidence that would support the conclusion that Radecki's active employment ended on May 17, 1991, including: (1) a letter from the chair of Radecki's department telling Radecki that his appointment with the department will terminate on May 17 and asking him to vacate his office by May 20; (2) a "Statement of Charges of Retaliation by the University of Nebraska-Lincoln," prepared by Radecki, which states that his last day of employment was May 17; a "University of Nebraska Personnel Action Form" contained in Mutual of Omaha's claim file which states that his appointment ended on May 17; and part B of the claim form completed by UNL which

states that his appointment ended on May 17, but which also states that his coverage ended on August 31.

However, Mutual of Omaha made a judicial admission that Radecki was "employed" by UNL through August 31, 1991. Moreover, there is substantial evidence in the record that Radecki continued to work in his office during the month of July and that he was engaged in preparing a final report on a National Science Foundation project throughout the summer.

For reasons not apparent from the record, Radecki's employment contract with UNL, which presumably sets forth the terms and dates of Radecki's active employment with the university, was not offered into evidence by either party. Because Radecki's employment contract with UNL was not in evidence, and giving Radecki the benefit of every inference which can reasonably be deduced from the evidence, there was a submissible factual issue as to when Radecki ceased "engaging in any work for profit" and became totally disabled under the policy. Furthermore, the evidence was in dispute as to whether Radecki could reasonably have been able to comply with the 90-day notification requirement or whether he should have received the benefit of the policy provision allowing an extension of up to 1 year for filing a claim. We, therefore, conclude that the trial court did not err in denying Mutual of Omaha's motion for a directed verdict at the close of the evidence and overruling Mutual of Omaha's motion for a judgment notwithstanding the verdict on Radecki's breach of contract cause of action.

## VI. CONCLUSION

For these reasons, we affirm the judgment of the district court in all respects.

AFFIRMED.

WHITE, C.J., and STEPHAN, J., not participating.